### COMMONWEALTH vs. MARGUERITE KELLY.

No. 06-P-1655.

Middlesex. May 7, 2007. - August 17, 2007.

Present: TRAINOR, DREBEN, & KATZMANN, JJ.

*Motor Vehicle,* Theft. *Practice, Criminal,* False report.

At the trial of a criminal complaint charging the defendant with knowingly making a false report of a motor vehicle theft pursuant to G. L. c. 268, § 39, the defendant's signature on a stolen motor vehicle report constituted a "written statement," as required under the statute, even though a police officer completed the remaining sections of the report [753-754]; further, there was sufficient evidence to prove that she knowingly made a written statement [754-755], and that such statement was made under the penalty of perjury, given the conspicuous warning printed above the line on which the defendant signed the report [755-756].

COMPLAINT received and sworn to in the Concord Division of the District Court Department on February 9, 2006.

The case was heard by *Stephen S. Abany,* J.

*Thomas D. Frothingham* for the defendant.

*Erin M. Bell,* Assistant District Attorney, for the Commonwealth.

TRAINOR, J. The defendant, Marguerite Kelly, was convicted after a jury-waived trial of knowingly making a false report of a motor vehicle theft pursuant to G. L. c. 268, § 39.[1] The only issue on appeal is whether the defendant's signature on a stolen motor vehicle report constitutes a "written statement," as required

---

[1] General Laws c. 268, § 39, states: "Whoever knowingly makes a false written statement on a form bearing notice that false statements made therein are punishable under the penalty of perjury, to a police officer, police department or the registry of motor vehicles alleging the theft or conversion of a motor vehicle, shall be punished by imprisonment for a first offense not less than five months, nor more than two years, or a fine of not less than two hundred and fifty dollars and not more than two thousand five hundred dollars, or both."

under the applicable statute, when a police officer completed the remaining sections of the report. We affirm.

*Facts.* In the middle of the night on February 3, 2006, and after having left a bar, Matthew Jones, accompanied by his friend Shawn Parks, visited the defendant at her apartment in Maynard. Within a few minutes of arriving, and after discovering no beer in the refrigerator, Jones asked the defendant if he could borrow her car to give Parks a ride home. She replied, "[Y]eah, if you can find the keys." As Jones was taking the keys from the kitchen table, the defendant told him "that if he wasn't back in ten, fifteen minutes, that she was going to call the cops." Driving through back roads, Jones slammed the car into a tree. After the accident, Parks ran home and Jones flagged down a police cruiser. Officer Collins of the Acton police department accompanied Jones to the scene of the accident and also requested help from the Maynard police department.

Having received the request for assistance, Officer Holmquist of the Maynard police department drove to the scene of the accident and recognized the car as being registered to the defendant's son but in the "physical custody" of the defendant. Officer Holmquist went to the defendant's home to speak with her; when he asked if she knew where her car was located, the defendant responded, "Is it not out in the parking lot?" Officer Holmquist questioned whether she had loaned her car to Jones, and she replied, "[D]id he take the keys?" And, when she was unable to locate them, she stated, "[H]e must have taken the keys." She informed Officer Holmquist that Jones visited her, alone, earlier that night. She reaffirmed to the officer that Jones was alone and that he took the keys.

Officer Holmquist then asked the defendant if she wanted to file a stolen motor vehicle report, and explained that he would fill out the details later. He testified that he "reviewed the entire sheet with her" and explained to her "that if she signs it it means that she's saying without any reservation that the vehicle was in fact stolen and that she would be, you know, held responsible if she filed inappropriately or deceptively." The defendant herself also testified that Officer Holmquist told her "that by signing the form [she was] reporting that it was stolen." The defendant did not ask any questions about the

stolen motor vehicle report, and she signed her name on the report in the officer's presence. When he returned to the police station, Officer Holmquist completed the remaining portions of the report by running the vehicle registration to obtain information about the vehicle, such as its description, registered owner, identification number, and insurer, and by learning the names of the Acton police officers who were investigating the incident. He also estimated the car's value as $1,000 because "[t]here are very few vehicles that [he is] aware of that are worth less than that."

Two days later, the defendant, "very agitated," followed up with a telephone call to Officer Holmquist, "asking why Mr. Jones was not arrested for having stolen her car." Officer Holmquist again asked the defendant whether she had given Jones permission to use the car, and "[s]he emphatically said no." For the first time, the defendant mentioned Parks as having been with Jones that evening. Officer Holmquist subsequently contacted Parks and requested that he come to the police station for questioning and to provide a written statement. After speaking with Parks, Officer Holmquist called the defendant and asked if she wanted to continue with her statement and stolen car report. She responded affirmatively and "was very emphatic that [Jones] took her car without permission and took her keys."

*Discussion.* At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on the ground that she signed a blank report, thereby not satisfying the "written statement" element of the applicable statute. The judge denied the defendant's motion because "what the officer wrote down is what was agreed to by [the defendant] and she adopted this as her own." We agree with his reasoning.

Moreover, contrary to the defendant's contention, her signature on the stolen motor vehicle report constitutes the "written statement" element of the statute. The defendant argues that because Officer Holmquist completed the report using the defendant's oral statements, and Massachusetts statutes distinguish between oral and written statements, these oral statements cannot satisfy the statute's written statement requirement. Compare G. L. c. 269, § 13A (criminalizing knowingly making false report of crime to police officer), with G. L. c. 268, § 39 (criminalizing know-

ingly making false written report under penalty of perjury to police officer). The defendant, however, authorized Officer Holmquist to fill in the details of the remaining sections of the report. See *Commonwealth* v. *Platt*, 440 Mass. 396, 398-399 (2003) (defendant informed officer of time, place, and circumstances of alleged theft before officer filled out stolen motor vehicle report in front of defendant, and then defendant read perjury warning and signed report); *Commonwealth* v. *Hanley*, 12 Mass. App. Ct. 501, 502-503 (1981) (complainants authorized court clerk to fill out blank complaint form). The remaining sections pertain to basic information about the car, such as its model name, vehicle identification number, registration number, and registered owner, as well as the names of the other officers investigating the incident and the location from which the vehicle was stolen and recovered. All of the information supplied by Officer Holmquist was descriptive in nature, related to his ministerial duties, and neither altered nor added in any way to the testimonial purpose of the report, which was the defendant's statement that her motor vehicle had been stolen.

Before signing the report, the defendant reviewed it with the officer and was aware that it contained the printed statement: "I hereby report to the above named Police Department that the following described Motor Vehicle was stolen in the City/Town of _____." This is the only false statement contained in the completed report. Officer Holmquist added only descriptive information, none of which was false. In addition, the defendant signed the report under the printed warning that "[f]alse statements made on this form are punishable under the penalty of perjury." It follows that these printed statements and the defendant's signature were a "written statement" as required by G. L. c. 268, § 39. See *Commonwealth* v. *Weene*, 319 Mass. 231, 234 (1946); *Commonwealth* v. *Hanley*, 12 Mass. App. Ct. at 503-504. Cf. *United States* v. *Wiseman*, 445 F.2d 792, 796 (2d Cir. 1971).

The defendant also argues that there was insufficient evidence to prove that she knowingly made a written statement under the penalty of perjury. The statute that the defendant was charged with violating is a specific intent crime, requiring that the de-

fendant "knowingly" make a false written statement on a form bearing notice that false statements made therein are punishable under the penalty of perjury. G. L. c. 268, § 39. The defendant claims that the Commonwealth failed to prove that when the defendant signed the report at 3:50 A.M., groggy after having taken a sleeping pill, she knew that what she was doing constituted making a written statement. The Commonwealth presented more than sufficient evidence to prove that the defendant knowingly intended to file the stolen motor vehicle report.[2] When Officer Holmquist asked the defendant if she wanted to report the car as stolen, the defendant answered affirmatively and signed the report. Moreover, the defendant herself testified that Officer Holmquist told her "that by signing the form [she was] reporting that it was stolen."

The defendant further argues that there was insufficient evidence proving that the defendant knew that the stolen motor vehicle report she signed bore notice that statements made therein were punishable under the penalty of perjury. The report itself includes a conspicuous warning making false statements punishable under the penalty of perjury. This warning is located immediately above the line on which the defendant signed her name. See *Commonwealth* v. *Platt*, 440 Mass. at 398-399. See also *Commonwealth* v. *Weene*, 319 Mass. at 233 (defendant convicted of perjury after he signed applications required by board of registration in medicine; perjury warning appeared just above signature line). In addition, Officer Holmquist testified that he reviewed the report with the defendant, and that he explained to her "that if she signs it it means that she's saying without any reservation that the vehicle was in fact stolen and that she would be, you know, held responsible if she filed inappropriately or deceptively." Although the defendant denies that Officer Holmquist explained the report to her, she admitted at trial that Officer Holmquist informed her about the consequences of her actions. Therefore, the record shows that the Commonwealth submitted sufficient evidence to prove that the defendant had sufficient

[2]The Commonwealth also presented evidence that the defendant appeared awake and coherent during the conversation and that she was neither intoxicated nor under the influence of drugs or liquor. The defendant did not ask any questions or indicate that she lacked understanding of the stolen motor vehicle report or what the officer was saying.

notice and knowledge that her statement could be punishable under the penalty of perjury.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*